**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Victoza (liraglutide) Antitrust Litigation | C.A. No. 1:26-cv-420-BMC |
| This Document Relates To:<br>ALL ACTIONS | |

**STIPULATED ORDER REGARDING PRODUCTION OF**
**<u>ELECTRONICALLY STORED INFORMATION</u>**

This Order (also referred to as the "ESI Protocol") will govern the production of documents and Electronically Stored Information ("ESI") by the parties in the above-captioned litigation as a supplement to the Federal Rules of Civil Procedure, this Court's rules, and any other applicable orders and rules in cases filed in or consolidated before this Court in this action, and to every action that is or will in the future become a part thereof (collectively the "Litigation").

Any third party who is subpoenaed in this action will be requested to comply with the production specifications set forth in this Order. Accordingly, this ESI Protocol will be attached to any subpoena issued in this action.

**I.    <u>GENERAL PROVISIONS</u>**

   **A. Deadlines:** References to schedules and deadlines in this ESI Protocol will comply with Federal Rule of Civil Procedure 6 with respect to computing deadlines.

   **B. Definitions:**

   1. Plaintiffs and Defendants may be referred to as a "Party" or "Parties" solely for the purposes of this ESI Protocol.

   2. "Custodian" shall mean any individual of a Producing Party, as identified and agreed by the parties, as likely having possession, custody, or control of potentially relevant documents.

3.  "Defendants" as used herein will mean the Defendants named in the operative complaints filed by Plaintiffs.

4.  "Document," "Documents," "Electronically Stored Information" or "ESI" as used herein will have the same meaning as defined under the Federal Rules of Civil Procedure.

5.  "Metadata" means the Metadata Fields for Electronic Discovery in Exhibit A.

6.  "Non-Parties" as used herein will mean other individuals or entities who may produce electronically stored information and documents in this Litigation, who will be subject to the terms of this ESI Protocol to the same extent as the Parties.

7.  "Plaintiffs" as used herein will mean the individual plaintiffs named in the operative complaints filed by Plaintiffs.

8.  "Producing Party" means the party producing documents.

9.  "Receiving Party" means the party receiving production of documents.

10. "Requesting Party" means the party requesting production of documents.

11. "Structured Data" means data that has been organized in a database or similar formatted data repository (e.g., SAP, JD Edwards, Microsoft Dynamics, Oracle, SQL, Microsoft Access).

12. "TAR" (technology-assisted review) means a machine learning process for identifying, prioritizing, or coding a collection of documents.

## II.    IDENTIFICATION AND COLLECTION OF DOCUMENTS

A. **Cooperation**: The Parties will conduct discovery in a cooperative manner, including without limitation, by meeting and conferring in good faith on any preservation, collection, review, and production issues that arise during the course of discovery and by collaboratively identifying and discussing search and culling methodologies.

**B. Custodians, Custodial Data Sources, Non-Custodial Sources and Search Methodology**

1. **Custodians**: Unless modified by a Court order, within 25 days of responding to a first request for production, the Producing Party must disclose in writing its proposed document Custodians and custodial sources that the Producing Party believes, based on its investigation to date, may reasonably be likely to contain responsive information.

2. **Non-Custodial Sources**: The Parties will meet and confer in good faith to agree upon a list of non-custodial sources that will be searched. So as to ensure no delay in the negotiations over search terms and custodians and the timely production of documents, the Producing Party will expeditiously identify non-custodial sources that may be searched. Unless modified by a Court order, no later than the later of (i) 25 days of the Court's entry of this ESI Protocol or (ii) 60 days from the response date for the first request for production directed to the Producing Party, the Producing Party must disclose in writing an initial set of "non-custodial" document sources that the Producing Party believes, based on its investigation to date, may reasonably be likely to contain responsive information.

3. **Search Methodology.** The Parties intend to use search terms to locate responsive ESI. Before using any other methodology, including Technology Assisted Review ("TAR"), Continuous Active Learning ("CAL"), or Artificial Intelligence ("AI"), to withhold non-responsive ESI or exclude from manual review documents that hit on search terms used by the parties, the Producing Party will disclose in writing its proposed alternative methodology for identifying responsive ESI before

3

implementing any such methodology. The Parties will meet and confer about any disputes concerning the methodology, and the party employing a technology-based review process agrees to timely respond to the other party's reasonable request for such information.

C. **Negotiation.**

1. The Parties shall collaborate in good faith concerning the Producing Party's proposed custodians, custodial data sources, non-custodial sources, and proposed search methodology, including search terms.

2. During discovery, a Party may propose additional custodians, sources, or search terms where there is a reasonable basis to believe that additional custodians, sources or search terms will lead to the discovery of responsive documents. The Parties agree to meet and confer in good faith concerning any such requests.

D. **Structured Data**. To the extent a response to discovery requires production of Structured Data, the Parties shall, when reasonably possible, produced such data in a reasonably usable format, such as reports in Microsoft Excel, Microsoft Access or ASCII delimited text format. The Parties agree to meet and confer in good faith to resolve any issues regarding the format of data productions.

E. **Otherwise Known Responsive Information:** Documents or ESI that a Producing Party is specifically aware are responsive to discovery requests (subject to the Producing Party's objections and responses and other agreements on discovery) should be produced. This provision shall not be interpreted to require discovery beyond what is required by the Federal Rules of Civil Procedure or otherwise contradict this ESI Order.

F. **Retention and Preservation**: Each party is responsible for taking reasonable steps to preserve potentially discoverable documents and metadata that is in its possession, custody, or control. The parties shall collect and process documents using methods that preserve available data. As to metadata, the parties shall use best efforts to ensure that the dates, times, and file metadata are the same as the original source data and not the byproduct of data collection or data processing. The parties agree that, absent good cause and substantial need shown by the Requesting Party, they need not preserve or collect ESI that is not reasonably accessible, including but not limited to:

a. Backup data files maintained in the normal course of business for purposes of disaster recovery, including, without limitation, backup tapes, disks, SAN, and other forms of media;

b. Unallocated data, slack space, deleted data, file fragments, or other data accessible only by use of computer forensics;

c. Random access memory, temporary files, or other ephemeral data;

d. Online access data such as, without limitation, temporary internet files, history files, cache files, and cookies; and

g. Files on the NIST list.

G. **Reservation of Rights:** By agreeing to the use of a particular search methodology, the Requesting Party does not waive objections that the search methodology was not implemented in a proper, effective, or good faith manner.

III.   **PRODUCTION FORMAT PROTOCOLS**

A. To the extent feasible, productions will comply with Exhibit A: Metadata Fields for

Electronic Discovery, as well as the below parameters.

**B.** The Parties agree to produce documents in the format described below. A Producing or Requesting Party may seek to use a different format for a targeted set of documents if the agreed format is not reasonably technically feasible to produce or review, in which case the parties will promptly meet and confer with respect to such request and will submit the issue for resolution by the Court only if they are unable to resolve the dispute through the meet and confer process. To the extent practicable, any alternative formats proposed should not materially degrade the searchability and useability of ESI or other materials.

**C.** Except for Structured Data and specified file types addressed in "Production of Native Items" below, documents will be produced in TIFF or PDF format. No matter the format, original document orientation should be maintained to the extent reasonably practicable and technologically possible for a Producing Party's vendor (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file will, (1) to the extent reasonably practicable, also be imaged so that this information is captured on the produced image file, and (2) if such imaging is not reasonably practicable, be produced in native format.

1. **TIFF**: A Producing Party may produce documents in single-page, black-and-white (except as provided below) Group IV TIFFs of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that particular image. Each image will be branded according to the Bates number and any confidentiality designation.

6

2. **PDF**: A Producing Party may produce documents in multi-page, black-and white (except as provided below) searchable PDF format at a resolution of at least 300 dpi. A load file will accompany PDF productions of documents. Each PDF will have a file name that is unique to the Bates number of the document. Each PDF will be branded according to the Bates number and any confidentiality designation.

D. **Text Files**: Each ESI item produced under this ESI Protocol will be accompanied by a text file as set out below. All text files will be provided as a single document level text file for each item, not one text file per page. Each text file will be named with the Bates number of the first page of the corresponding production item. Text files will contain any hidden content, tracked changes, edits, comments, notes, and other similar information of the ESI item to the extent technically feasible. Emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available.

E. **Production of Native Items**: ESI will generally be produced as TIFFs or PDFs with an accompanying load file, which will contain the ESI data points listed in Appendix 1 hereto. Exceptions include but are not limited to (a) documents for which the metadata or other information readily identifiable for the Producing Party indicates the document contains hidden content, embedded comments, or tracked changes, (b) spreadsheet-application files (e.g., Microsoft Excel), (c) presentations (e.g., Microsoft PowerPoint), (e) audio and visual files, such as voice and video recordings (e.g., .wav, .mpeg, and .avi). These categories of ESI will be produced in native format. For the avoidance of doubt, this provision does not include production of source code. The Parties agree to meet and confer on the production of source code

7

should a need for production of source code arise.

1. For each document produced in native format, the Producing Party will produce a single-page, Bates-numbered slip sheet indicating that a native item was produced with the wording "Document Produced Natively," along with extracted text where available and with the applicable data points listed in Appendix 1. The corresponding load file will include NativeFileLink information for each native file that is produced.

2. The Producing Party will exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

3. The Parties agree to meet and confer prior to producing native file types other than set forth above, in which case the Producing Party will disclose the file type to and meet and confer with the Requesting Party on a reasonably useable production format.

**F. Bates Numbering:**

1. All images must be assigned a Bates number that must always: (1) be unique across the entire document production, (2) maintain a constant prefix and length (e.g., ten-digits and 0-padded) across the entire production, (3) contain no special characters or embedded spaces, except hyphens or underscores, (4) be sequential within a given document, and (5) identify the Producing Party.

2. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

3. To the greatest extent practicable, the Producing Party will brand each TIFF image

or PDF at a location that does not obliterate or obscure any part of the underlying document. If Bates number branding obliterates or obscures any part of an underlying document, upon reasonable request of the Requesting Party, the Producing Party will re-produce the affected ESI items with the branding in a different location that does not obliterate or obscure the underlying images.

G. **Parent-Child Relationships**: Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. Each family of documents should also be identified using a family ID number or other unique identifying number, such as the beginning Bates number of the parent document.

H. **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (e.g., an Opticon file), as well as a metadata (.dat) file with the metadata fields identified in Appendix 1 on the document level to the extent available, though the parties are not obligated to include metadata for any document that does not contain such metadata in the original if it is not possible to automate the creation of metadata when the document is collected. The load file must reference each TIFF or PDF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. Load files will not vary in format or structure within a production, or from one production to another.

I. **Requests for Native, High-resolution, and Color Documents**: The parties agree to respond to reasonable and specific requests for the production of native files,

documents in color, and documents in a higher resolution. Nothing in this ESI Protocol will preclude a Producing Party from objecting to such requests as unreasonable in number, timing or scope, provided that a Producing Party will not object if the document as originally produced is illegible or difficult to read. If a dispute arises with regard to requests for native files, documents in color, or documents in a higher resolution, the parties will meet and confer in good faith to try to resolve it.

J. **Original Language**: All documents will be produced in their original language. All extracted text must be produced in a Unicode compliant format in the load file. Nothing in this ESI Protocol will require a Producing Party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

K. **Request Identification**: Production of documents and ESI in the reasonably usable form set out in this ESI Protocol need not include any reference to the requests to which a document or ESI may be responsive.

L. **Confidentiality Designations**: If a particular document or ESI item qualifies for confidential treatment pursuant to the terms of any protective order entered by the Court in the Litigation or confidentiality stipulation entered into by the Parties, the designation will be branded on the document at a location that, where applicable, does not obliterate or obscure any part of the underlying document. This designation also should be included in the appropriate data field in the load file. Failure to comply with the procedures set forth in this ESI Protocol will not waive any protection or confidential treatment. If confidentiality designation branding obliterates or obscures any part of an underlying document, upon request of the Receiving Party, the

10

Producing Party will re-produce the affected ESI items with the branding in a different location that does not obliterate or obscure the underlying document.

M. **Production Protocol**: Unless otherwise agreed to by the Parties, documents will be exchanged through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. Each Production will include a unique identifier and be companied by a cover letter including the following information:

1. Name of litigation and its case number;

2. Name of the Producing Party;

3. Date of the production (mm/dd/yyyy);

4. Production volume number;

5. Bates number range(s);

6. Confidentiality designation; and

7. Notes regarding any irregularities in the production (e.g., whether it is a replacement Production or a Production of hardcopy document).

Any replacement Production will cross-reference the original Production, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced. Producing Parties may encrypt their Productions, and if so, will provide a key to decrypt the Production in a separate communication.

N. **Materials Collected for or Produced in Other Litigation or Investigations**: Notwithstanding any other provision of this ESI Protocol, any Document that was originally produced in a different litigation that is subsequently reproduced in this case will be produced in the same format and with the same Bates numbering as in the original action, unless otherwise agreed to by the

Parties.  Except for the obligations set forth in III.E, above, nothing in this ESI Protocol requires Parties to alter the format of any such Documents.

IV.    **ESI METADATA FORMAT AND PROCESSING ISSUES**

   A. **Metadata Fields and Processing:**

1. **Date and Time Fields**: No Party will modify the date or time as contained in any original ESI, except, to the extent reasonably practicable, ESI items will be processed so as to show the metadata date in Universal Coordinated Time (UTC). Reasonable efforts will be made to display all the dates displayed within produced Documents in UTC. To the extent reasonably practicable, ESI items will be processed so to preserve the date/time shown in the document as it was last saved, rather than the date of collection or processing.

2. **Practicality**: If a Producing Party believes the above provision(s) are not reasonably practicable for some portion of its production, it will inform the Requesting Party/parties and promptly meet and confer in a good faith effort to resolve any dispute. The parties may submit any such dispute to the Court for resolution only if they have been unable to reach resolution through the meet and confer process.

3. **Manual Population**: The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) all Custodians of the document, (f) Confidentiality, (g) Redacted (Y/N), and (h) NativeFile fields, which should be populated, when applicable, regardless of

12

whether the fields can be populated pursuant to an automated process.

**B. Redaction Format**

1. The Parties agree that, for any ESI items for which this ESI Protocol otherwise permits production in TIFF or PDF format, redactions may be made in TIFF or PDF format, with each redaction clearly indicated. Any metadata fields reasonably available and which can be disclosed without disclosing privileged information will be provided. The Producing Party may, alternatively, produce the item as a redacted native file in accordance with the following paragraph.

2. If the items redacted and partially withheld from production would otherwise be required to be produced as native files under this ESI Protocol, then they may be produced as native files with redactions to the extent possible using a native redaction tool, such as "Blackout" or "BlackBar,"

3. If native redaction is not reasonably practicable, the Producing Party shall produce the item in TIFF or PDF format.  In producing such item as a TIFF or PDF, the Producing Party will make reasonable efforts to ensure that the items are formatted so as ensure non-redacted content is visible and legible. For example, for PowerPoint-type presentation decks, speaker notes should be revealed, and for Excel-type spreadsheets, hidden rows and columns should be visible and column widths should be formatted so that the values in the column will display their actual contents rather than "##########."

4. If audio/visual or other media files require "redaction," the parties will promptly meet and confer concerning the format of production and privilege assertions. If the parties are unable to reach agreement through meet and confer discussions, they

13

may seek resolution from the Court.

C. **Rolling Productions:** The Parties agree to produce documents in phases on a rolling basis consistent with the Court's orders relating to scheduling.

D. **De-Duplication**: If a Producing Party elects to de-duplicate, the Producing Party will employ global deduplication of ESI on a family-level basis across all custodians and data sources, so long as such deduplication (a) will allow for the Producing Party to list all custodians who possessed it in the "CustodianOther" or "CustodianAll" metadata field in Appendix 1 and (b) the "All File Paths" field shall contain the file path(s) for each non-produced duplicate. Removal of duplicates should only be done on exact duplicates (by the MD5 hash algorithm or a reasonably equivalent alternative) to create and compare hash values for exact duplicates only. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. Any email families that, despite not having matching MD5 hash values, contain the same content, sender and recipients as other messages such that they would be identified as "email duplicate spare messages" by the Relativity document review platform or would receive an equivalent designation in an alternative document review platform may be treated as duplicates by the Producing Party, except that an email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.

E. **Microsoft "Auto" Feature**: To the extent reasonably practicable Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto"

14

features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business. If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document will be branded with the words "Auto Date," "Auto File Name," or "Auto File Path" formula used or similar words that describe the "auto" feature, to the extent reasonably practicable.

F.  **Hidden Text**: To the extent reasonably practicable, ESI items will be processed in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments. The Parties will use reasonable efforts to ensure that, at the time of production, all hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments are visible on the face of the TIFF image(s) or PDF, unless redacted in accordance with this ESI Protocol.

G.  **Hyperlinked Documents:**

1.  **Collection and Production of Hyperlinked Documents**: To the extent reasonably practicable a Producing Party will collect hyperlinked documents from the Producing Party's custodial or non-custodial sources, such as hyperlinks utilizing Google Workspace, Microsoft Office's "Share Documents Via Link" feature, or other document sharing platforms with the email or parent document that reference the hyperlinked documents. Documents extracted from embedded files or hyperlinks shall be populated with metadata fields enabling the Receiving Party to identify the family relationship.

2.  **Supplemental Production of Hyperlinked Documents**: Upon reasonable request

15

by the Receiving Party, the Producing Party will produce any unproduced hyperlinked documents that are referenced within the Producing Party's production. A reasonable request for hyperlinks should include a list of hyperlinks and corresponding Bates Numbers. The parties will meet and confer on the scope of the request and timing for production.

H. **Compressed Files**: To the extent reasonably practical, compression file types (i.e., .CAB, .GZ, .TAR, .z, and .ZIP) will be decompressed in a recursive manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

I. **Password-Protected, Encrypted, or Proprietary-Software Files**: With respect to any responsive ESI items that are password-protected or encrypted by the Producing Party, the Producing Party will take reasonable steps to locate and apply passwords and encryption keys so that the documents can be reviewed and produced if appropriate. If reasonable efforts have been made, but are unsuccessful, the Parties will meet and confer regarding the next steps, if any, with respect to such ESI.

J. **Corrupted or Technical Issue Documents**: If a document being produced (i.e., it is otherwise in a responsive family) cannot be processed (e.g., it is corrupt or protected by an unavailable password), a single-page, Bates-stamped image slip sheet stating "File Could Not Be Processed" or similar wording will be provided and a meta-data field for "Technical Issue" will be populated.

## V.    <u>REDACTIONS</u>

A. **Personally Identifiable Information ("PII") Redactions**: A Producing Party may redact personally identifiable information (including but not limited to patient names or Social Security Numbers related to medical bills, procedures, or claims) provided

that it is irrelevant. The producing and requesting Parties will promptly meet and confer in a good faith effort to resolve any dispute and will submit the matter to the Court for resolution only if they are not able to reach resolution through the meet and confer process.

B. **Redaction and Withholding for Relevance Not Permitted**: Except pursuant to the Parties' agreement or, if agreement cannot be reached, through Court resolution, a Producing Party may not redact information on the ground that it is irrelevant, nor may a Producing Party withhold a member of a document family on such grounds.

VI.    **NON-PARTY DOCUMENT REQUESTS**

A. **Non-Party Document Subpoenas**: All Non-Party document subpoenas will be served on all counsel of record in compliance with Federal Rule of Civil Procedure 45. Service via email on a designated service list will constitute compliance with Federal Rule of Civil Procedure 45.

B. **Non-Party Document Productions:** The recipient of a non-Party document production will serve a copy of that document production on all counsel of record within five (5) business days of receiving the document production. Service of documents or a file transfer link via email on a designated service list will constitute compliance with this paragraph.

C. **Informing Non-Parties of This ESI Protocol:** The Parties agree to provide a copy of this ESI Protocol with any document subpoena served in this Litigation.

VII.    **MISCELLANEOUS PROVISIONS**

A. **Inaccessible ESI:** If, in responding to a request for production, a Producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are not reasonably accessible because of undue burden or cost, the

17

Producing Party shall make that assertion to the Requesting Party as soon as practicable and the Parties will promptly meet and confer in good faith to try to resolve such issues. The Parties may submit such issues to the Court for resolution only if they have been unable to reach resolution through the meet and confer process.

B. **Limitations.** Nothing in this ESI Protocol establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any Document or ESI. Nothing in this ESI Protocol will be interpreted to require the production of information protected by the attorney-client privilege, work product doctrine, or any other reasonably applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

C. **Variations or Modifications:** Variations from this ESI Protocol may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants, which will be confirmed in writing. In the event a Producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, including with respect to any applicable deadlines, the Producing Party will notify the Requesting Party of the variation or modification. Upon request by the Requesting Party, those Parties will promptly meet and confer in good faith to address any issues in a reasonable and timely manner prior to seeking Court intervention.

D. **Best Efforts Compliance and Disputes.** The parties agree to use their reasonable efforts to comply with and resolve any differences concerning compliance with any provisions of this ESI Protocol. If a Producing Party cannot comply in a particular

18

circumstance with this ESI Protocol, such party will promptly inform the Requesting Party in writing why compliance with the ESI Protocol is not reasonable or feasible. No party may seek relief from the Court concerning compliance or non-compliance with the ESI Protocol until it has met and conferred with the other party in a good faith effort to resolve or narrow the area of disagreement.

SO ORDERED, this __ day of _____, 2026.

_____
U.S.D.J.

**Stipulated and agreed**:

By:    */s/ Andrew Lazerow*

Andrew Lazerow
Ashley Bass
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
alazerow@cov.com
abass@cov.com

*Counsel for Defendants Novo Nordisk Inc. and Novo Nordisk A/S*

By:    */s/ Bradley Demuth*

Bradley J. Demuth
**FARUQI & FARUQI LLP**
685 Third Avenue
New York, NY 10017
(212) 983-9330
bdemuth@faruqilaw.com

Peter Kohn
**FARUQI & FARUQI LLP**
1617 JFK Blvd, Suite 1550
Philadelphia, PA 19103
(215) 277-5770
pkohn@faruqilaw.com

Bruce E. Gerstein
Dan Litvin
**GARWIN GERSTEIN & FISHER LLP**
88 Pine Street, 28th Floor
New York, NY 10005
(212) 398-0055
bgerstein@garwingerstein.com
dlitvin@garwingerstein.com

*Counsel for Plaintiff J M Smith Corporation and Interim Co-Lead Counsel for the Direct Purchaser Class*

By: */s/Brian D. Brooks*

Brian D. Brooks
Greg Linkh

19

Lee Albert
**GLANCY PRONGAY WOLKE &
ROTTER LLP**
230 Park Avenue, Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com
bbrooks@glancylaw.com
lalbert@glancylaw.com

Justin N. Boley
Tyler J. Story
Margaret L. Shadid
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Drive, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
jnb@wbe-llp.com
tjs@wbe-llp.com
ms@wbe-llp.com

Joey P. Leniski, Jr.
**HERZFELD SUETHOLZ GASTEL
LENISKI AND WALL PLLC**
1920 Adelicia Street, Suite 300
Nashville, TN 37212
Telephone: (615) 800-6225
joey@hsglawgroup.com

Todd Seaver
Carl N. Hammarskjold
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
tseaver@bermantabacco.com
chammarskjold@bermantabacco.com

*Counsel for Plaintiff Teamsters Local 237
Retiree Fund and Uniformed Fire Officers
Association Retired Officers Family
Protection Plan*

20

**Appendix 1: ESI Metadata and Coding Fields**

| Field Name[1] | Populated For (Email, Edoc, or All) | Field Description |
|---|---|---|
| BegBates | All | Beginning Bates number as stamped on the production image. |
| EndBates | All | Ending Bates number as stamped on the production image. |
| BegAttach | All | First production Bates number of the first document of the family. |
| EndAttach | All | Last production Bates number of the last document of the family. |
| Custodian | All | Custodian name (ex. John Doe). |
| CustodianOther or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| | | |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, which facilitates use of email threading. |
| Thread Index | Email | Message header identifier, distinct from "PR_ Conversation_ Index", that permits threading of Email chains in review software. |
| Email Subject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified |
| TimeSent | Email | Time email was sent. |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol.

21

| Field Name[1] | Populated For (Email, Edoc, or All) | Field Description |
|---|---|---|
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. |
| TimeCreated | Edoc | Time the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| DocType | Email, Edoc | Single choice field that indicates the file is an email, edoc, attachment or hard copy. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "Yes" indicator that the document is redacted. Otherwise, leave blank. |
| PrivRedacted | All | "Yes" indicator that the document is redacted on the basis of privilege. Otherwise, leave blank. |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | All | Indicates any designation under a protective order entered by the Court in the Litigation or a confidentiality stipulation entered into by the Parties. |

22

| Page Count | All | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). |
|---|---|---|
| File Path | All | File/path of the location where the item was located during the normal course of business. |
| All File Paths | All | File Path that would have been provided for each version of the document that was not produced due to de-duplication. |
| HasHiddenContent[1] | Non-Email ESI | Y if hidden content, otherwise N or empty. |

---

[1] "Hidden Content" for purposes of this field will include tracked changes, comments, hidden slides, hidden columns, hidden worksheets, or other hidden text.